STATE, NEW JERSEY MIDLAND RAILROAD COMPANY, PROSECUTOR, v. MAYOR AND ALDERMEN OF JERSEY CITY.

1. The charter of the prosecutors provides for the payment by the company of a state tax, and contains a proviso "that no other tax or impost shall be levied or assessed upon said company." *Held*—1. That the word "assessed" in the proviso cannot have the force and meaning of describing special levies for public improvements, but is used merely to describe the act of levying the tax or impost. 2. That the company is not, by the proviso, exempt from assessments for local improvements.

2. The effect of Section 9 of the act of 1873 for the taxation of railroads, is to subject the property of all railroad corporations of a character to be benefited by local improvements to special assessment for the costs of such improvements, when the public work benefits the property in the uses to which it is applied.
3. When property is legally subject to assessment, and the proceedings of the commissioners are regular, the report is conclusive, in the absence of other proof, of the fact of benefit actually received, and of its amount and value.

On *certiorari*. In matter of street improvement in Jersey City.

Argued at June Term, 1879, before Justices SCUDDER, KNAPP and REED.

For the prosecutor, *W. Brinkerhoff*.

For the defendant, *Leon Abbett*.

The opinion of the court was delivered by

KNAPP, J. The purpose of this *certiorari* is to review a special assessment against the prosecutors for the improvement of Hoboken avenue, in Jersey City. The property assessed forms the road bed and terminal lands of the prosecutor, near the junction of its railroad with the Pennsylvania railroad. The road bed does not exceed fifty feet in width, and the terminal tract is much less than ten acres.

Against the assessment the prosecutor urges that the street is of no benefit to its lands, and that it is by law exempt from all assessments for local improvements. The exemption is claimed, first, by force of the company's charter, and, second, under the provisions of the act of 1873 relating to railroad taxation.

The prosecutor was created a corporation by act of March 17th, 1870. *Pamph. L., p.* 811. The sixth section of the act of incorporation provides for the payment by the company of a state tax, and contains a proviso " that no other tax or impost shall be levied or *assessed* upon said company." The prosecutor claims that because the word " assessed " is used

in the proviso, the exemption includes assessments for the cost of local improvements. Such, clearly, is not its effect. *Taxes* and *imposts* describe levies for public revenue. The term "assessments," when used in a clause of exemption, has been held appropriate to describe special levies for the cost of local improvements. *State, Foster Home, pros.,* v. *Newark,* 7 *Vroom* 478.

The word "assessed," used in the proviso in question, cannot have such force or meaning. Taxes and imposts are assessed; and the word is there used merely to describe the act of laying the tax or impost, and is synonymous with the word "levy."

The company is not exempted by its charter. Is it so under the railroad taxation act?

The ninth section of the act of 1873 for the taxation of railroads provides as follows: "All railroad corporations shall be liable for city improvements beneficial to *such property* for the purposes for which it is used by the said company, except that hereby made subject to state tax. Provided, that nothing in this or any act shall have the effect to alter any law now existing in relation to such improvements." The section, as framed, expresses with not very great clearness the meaning of the legislature; but I think it is safe to say of the body of the section that its purpose is to subject *the property* of all railroad corporations of a character to be benefited by local improvements, to special assessment for the cost of such improvements, when the public work benefits the property in the uses to which it is applied. The exception or saving clause, which is relied on by the prosecutor to work its exemption from assessment, reserves "that hereby made subject to state tax." Does this exception save the real property of the railroad company from assessment if it receives benefits? The first section of the act contains the only provision found in the law imposing a state tax. It enacts that railroad companies "shall pay upon the cost, *equipment* and *appendages* of said railroads, a state tax of one-half of one per centum upon such cost." Assuming this to mean a tax upon the cost of

the railroad, including equipments and appendages, what is it that in the ninth section is excepted from assessment that could be the subject of such tax? It is to be observed that it is not the railroad, its equipments or appendages that are taxed by the state under that law. It taxes no tangible property of railroad companies for state revenue. The imposts of the state are laid upon the franchises of the corporations, and the measure of them is a sum equal to one-half of one per cent. of the cost of the railroad, *its equipments and appendages*. Then as no property of the company which could be subjected to assessment is taxed by that law as state tax, there is none for the saving clause to apply to and exempt from assessment. But the argument of counsel treats this as a too narrow and illiberal construction to fairly evolve the legislative intent in this enactment, claiming that the true construction and meaning of it is to exempt that property the cost of which is, by the first section of the act, taken as the basis on which the state tax is to be computed. Let us suppose the true meaning of the clause to be as claimed; can such an exception be sustained under the settled rules of statutory construction? The exception so interpreted seems to me to be so broad in its scope, that within the narrowest limits that may be ascribed to it, must be included all property which the company holds and has in use, subservient to the purposes of its creation, which, by its charter, it may lawfully hold and use for such purposes.

Outside of this limit might perhaps be found, subject to assessment, lands held by railroad companies as ordinary proprietors; but, could the legislature have ever supposed that it needed this enactment to subject such property to assessment for benefits through the construction of local public works?

The act of 1873 was designed to establish a uniform rule for railroad taxation, and the purview or enacting clause of its ninth section undertakes to subject the corporate property of railroads which derive benefit from the construction of local improvements, to assessment for those benefits where such mode of taxation has legal existence; and in this, it merely

declares what the courts had held them subject to, unless legislative exemption could be pleaded in their relief. This saving clause, under the interpretation claimed for it—in exempting the *particular* out of the *general* property made assessable—approaches so closely to, if it does not reach total repugnancy to the general purpose of the section, that if the exception could stand at all, it would be left in a very tottering condition.

A saving clause in an act, which is totally repugnant to the purview or body of the act, is void. 1 *Kent Com.* 462; *Milford* v. *Elliot*, 8 *Taunt.* 1 ; *Potter's Dwar. on Stat.* 117.

A *proviso* in an act has given to it a different effect. *Townsend* v. *Brown*, 4 *Zab.* 80.

This is a rule not to be inconsiderately applied. The repugnancy to justify the court in striking the conflicting exception from the act should, after every reasonable effort, by construction and accommodation to retain it, and give it some force in the enactment, remain totally irreconcilable with the enacting clause. But if, after such effort at construction, it proves to be unyielding, the rule that condemns it becomes equally so.

Under the construction contended for by the prosecutor, I think we meet with a difficulty of this character, that successfully defies all efforts at reconciliation.

In practical effect, a section in the act which, when the body of it alone is regarded, seems designed to declare and establish a general rule subjecting the property of railroad companies, which may be benefited by the construction of public works, under municipal governments, to assessment for those benefits, in the same manner as like property of other owners is subject, under the operation of the saving clause, becomes a general exemption from such tax, of all the property which such a corporation holds, under its charter, for corporate purposes.

Nothing is left for assessment except such lands of the company as would be liable thereto, under a charter containing an express exemption of all property of the company held under such charter for the purposes of the corporation.

What is reserved is as great as that which is granted, and the saving clause could not be sustained, but would be void for repugnancy.

Under either construction of this act of 1873, it fails to give the prosecutor exemption.

My conclusions leave the prosecutor subject to assessment upon its real property for benefits valuable to it, in respect to those uses to which the company, under its charter, has applied it.

Such benefits are sufficiently certain as a basis of assessment, when the property is, like that of the prosecutor, devoted to uses apparently permanent.

Among the reasons for setting aside the assessment, is the one of fact that the improvement assessed for is not, in any way, beneficial to the prosecutor's property, or only nominally so. None of the property assessed exists in the form of city lots, although marked as such on the assessment map. It is all appropriated to, and is in use for main and side tracks and depot buildings. Hoboken avenue, the street improved, is distant, at its nearest point, one-fourth of a mile from the assessed property, and has no other relation to the property than that of terminating in a street which crosses over the margin of the prosecutor's most easterly terminal tract. What character of benefits the commissioners of assessments found this property to have received from the improvement of the street in question, does not appear.

An assessment made on the mere possibility that the present use of the property may be abandoned, and the lands converted into lots for building purposes, is, in the nature of things, quite remote as a ground of assessment; and nothing beyond a nominal assessment for that, would ordinarily be expected.

But, having reached the conclusion that the property is legally subject to assessment, and the proceedings of the commissioners appearing to be quite regular, we need not speculate upon the ground of benefit which they discovered and valued. Their report is the only proof before us of the fact

of benefit actually conferred, and of its amount and value. In the absence of other proof, the report is conclusive upon us as to those matters.

The assessment must therefore be affirmed.